1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JONATHAN LUCKETT,

11          Plaintiff,                        No. 2:09-cv-00037 KJN

12          v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
            Defendant.                        ORDER
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

18   ("DIB") and Child Insurance Benefits under Title II of the Social Security Act ("Act"), and

19   Supplemental Security Income ("SSI") under Title XVI of the Act.[1]  (Pl.'s Mot. for Summ. J.,

20   Dkt. No. 23.)  Plaintiff contends that the Administrative Law Judge's ("ALJ") and Appeals

21   Council's decisions are not supported by substantial evidence or are based on legal error, and that

22   the ALJ and/or the Appeals Council specifically erred by: (1) failing to accurately characterize, or

23   omitting discussion of, evidence in the record and opinions offered by physicians and

24
     _____
25          [1] This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed
26   before a United States Magistrate Judge.  (Dkt. Nos. 8, 10.)  This case was reassigned to the
     undersigned by an order entered February 9, 2010.  (Dkt. No. 24.)

1   psychologists in this case, including Deborah Von Bolschwing, Ph. D. ("Dr. Von Bolschwing"),

2   Madelaine Aquino, M.D. ("Dr. Aquino"), Robert L. Morgan, Ph. D. ("Dr. Morgan"), William

3   Egelston, M.D. ("Dr. Egelston"), and Norman A. Davis, P.S.C. ("Dr. Davis"); (2) erroneously

4   concluding that plaintiff's mental impairment did not meet or equal a medical listing at step three

5   of the sequential analysis; (3) improperly rejecting plaintiff's testimony as less than credible;

6   (4) improperly rejecting lay witness testimony regarding plaintiff's functional limitations;

7   (5) failing to evaluate the impact of plaintiff's obesity under Social Security Ruling ("SSR") 02-

8   1p, 67 Fed. Reg. 57859-02 (Sept. 12, 2002); and (6) failing to properly assess plaintiff's residual

9   functional capacity, which resulted in the ALJ posing legally inadequate hypothetical questions

10  to the vocational expert ("VE").  The Commissioner filed a written opposition to plaintiff's

11  motion.[2]  (Dkt. No. 27.)  For the reasons stated below, the court will grant plaintiff's motion for

12  summary judgment in part and remand this matter for further proceedings.

13  I.      BACKGROUND[3]

14          Plaintiff was born on June 26, 1983, completed high school and some community

15  college courses, although he had been placed in special education classes since childhood.  (See

16  Administrative Transcript ("AT") 39, 44, 70.)  Plaintiff claims to be afflicted with Asperger's

17  Syndrome,[4] a social phobia, obsessive tendencies, and other mental and behavioral problems.

18  _____

19      [2]  The Commissioner's brief is entitled "DEFENDANT'S OPPOSITION TO PLAINTIFF'S
    MOTION FOR SUMMARY JUDGMENT," and does not expressly move for summary judgment
20  on plaintiff's claims.  (See generally Dkt. No. 27; Scheduling Order at 1 ("Within 30 days after
    plaintiff's motion for summary judgment and/or remand is served, defendant shall file any
21  opposition, including cross motions."), Dkt. No. 5.)  The undersigned need not resolve whether the
    Commissioner's "opposition" also constitutes a cross-motion for summary judgment because the
22  undersigned will grant plaintiff motion for summary judgment.

23      [3]  Because the parties are familiar with the factual background of this case, including
    plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts
24  related to plaintiff's impairments and medical history will be addressed insofar as they are relevant
    the issues presented by the parties.

25

26      [4]  Asperger's Syndrome is a type of developmental disorder akin to autism with the following
    characteristics: "Language and cognition generally better than in autism; socially isolated and often

1  (AT 45, 52.)  He also allegedly suffers from an alleged congenital defect involving the bones in

2  his left foot, for which he has undergone multiple surgeries.  (AT 45-46, 322.)

3      A.      Procedural Background

4          On May 19, 2004, plaintiff filed applications for DIB, child insurance benefits,[5]

5  and SSI benefits, alleging an onset date of June 26, 1983, plaintiff's date of birth.  (See AT 128-

6  31, 342-43.)  The Social Security Administration denied plaintiff's application initially and upon

7  reconsideration.  (AT 81-84, 96-100, 102-07.)  Plaintiff requested a hearing before an ALJ, and

8  the ALJ conducted an initial hearing regarding plaintiff's applications on January 20, 2006.  (AT

9  34-62, 108.)  In a decision dated March 24, 2006, the ALJ found that plaintiff was not disabled

10 within the meaning of the Act.  (See AT 88-95.)

11         Plaintiff requested that the Appeals Council review the ALJ's decision on the

12 basis of new evidence, and the Appeals Council granted plaintiff's request and accepted that

13 additional evidence.  (AT 118, 122-23.)  On November 29, 2006, the Appeals Council remanded

14 the matter to the ALJ for a supplemental hearing and expansion of the record.  (AT 125-26.)  Of

15 particular relevance to plaintiff's claims of error before this court, the Appeals Council's order

16 specifically noted that although the record indicated that plaintiff was obese, the ALJ's decision

17 did not include an "evaluation of obesity consistent with SSR 02-1p."  (AT 125.)

18         The ALJ conducted a supplemental hearing at which plaintiff and the VE testified.

19 (AT 63-80.)  In a decision dated November 27, 2007, the ALJ concluded that plaintiff was not

20 disabled within the meaning of the Act because, based on the VE's testimony, plaintiff could

21

22

23 viewed as odd or eccentric; clumsiness; repetitive patterns of behavior, interests, and activities;
   atypical sensory responses (eg, exquisite sensitivity to noises, food odors or tastes, or clothing
   textures); pragmatic deficits (eg, extremely concrete use of language or difficulty recognizing irony

24 or jokes."  See Mark H. Beers, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 2487
   (Merck Research Labs., 18th ed. 2006) ("Merck Manual").

25

26         [5] An award of child insurance benefits is provided for by 28 U.S.C. § 402(d); see also Moore
   v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002).

1   perform jobs that existed in significant numbers in the national economy.[6]  (See AT 15-24.)

2           The ALJ's decision became the final decision of the Commissioner when the

3   Appeals Council denied plaintiff's request for review.  (AT 7-9.)  Plaintiff had requested review

4   of the ALJ's November 2007 decision on the grounds that the ALJ failed to comply with the

5   Appeals Council's remand order and committed several other errors, and on the basis of new

6   medical evidence in the form of a medical opinion issued by Dr. Davis, a licensed psychologist.

7   (See AT 10, 11, 344-51.)  The Appeals Council's denial of review stated, in relevant part: "We

8   found no reason under our rules to review the [ALJ's] decision.  Therefore, we have denied your

9

10          [6] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security
11  Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit
    schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful
12  activity" due to "any medically determinable physical or mental impairment which can be expected
    to result in death or which has lasted or can be expected to last for a continuous period of not less
13  than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation
    governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976;
14  see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has
    summarized the sequential evaluation as follows:

15
            Step one:  Is the claimant engaging in substantial gainful
16      activity?  If so, the claimant is found not disabled.  If not, proceed to
        step two.
17          Step two:  Does the claimant have a "severe" impairment?  If
        so, proceed to step three.  If not, then a finding of not disabled is
18      appropriate.
            Step three:  Does the claimant's impairment or combination
19      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically determined
20      disabled.  If not, proceed to step four.
            Step four:  Is the claimant capable of performing his past
21      work?  If so, the claimant is not disabled.  If not, proceed to step five.

22          Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
23      disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

                                                4

request for review."  (AT 7.)  It did not address in detail any of the claimed errors and did not specifically reject any portion of Dr. Davis's opinion.  The decision did state that the Appeals Council considered the additional evidence submitted by plaintiff, but that it did "not provide a basis for changing the [ALJ's] decision."  (AT 7-8.)

Plaintiff subsequently filed this action.

B.    Summary of the ALJ's Findings

The ALJ conducted the five-step, sequential evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, found that plaintiff had not engaged in substantial gainful employment activity since June 26, 1983, the alleged date of onset.  (AT 17.)  At step two, the ALJ concluded that suffered from the following "severe" impairments:  "pervasive developmental delay, status post left ankle surgery and obesity."  (AT 17.)

At step three, the ALJ determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1, Parts A & B.  (AT 19.)  Relevant here, the ALJ concluded that plaintiff's mental impairment did not meet or medically equal Listing 12.10, which addresses "Autistic disorder and other pervasive developmental disorders."[7]  In doing so,

---

[7] Listing 12.10 provides:

12.10 Autistic disorder and other pervasive developmental disorders: Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often, there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of the following:

1. For autistic disorder, all of the following:

a. Qualitative deficits in reciprocal social interaction; and

he rejected Dr. Morgan's treating opinion that plaintiff met the criteria of Listing 12.10.  (AT 22, 311.)

The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to "perform sedentary work except he should not be required to operate foot controls with the left lower extremity.  The claimant retains the ability to understand, remember and carry out simple job instructions."  (AT 20.)

The ALJ found at step four that plaintiff had no past relevant work.  (AT 22.)  At step five, the ALJ concluded, in reliance on plaintiff's RFC and the VE's testimony, that plaintiff was not "disabled" within the meaning of the Act because plaintiff was able to perform the following jobs in significant numbers in the national economy: office helper, agricultural sorter, and small parts assembler.  (AT 22-23.)

---

b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity; and

c. Markedly restricted repertoire of activities and interests;

Or

2. For other pervasive developmental disorders, both of the following:

a. Qualitative deficits in reciprocal social interaction; and

b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.10.

1   II.     STANDARDS OF REVIEW

2          The court reviews the Commissioner's decision to determine whether it is (1) free

3   of legal error, and (2) supported substantial evidence in the record as a whole.  Bruce v. Astrue,

4   557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as "highly

5   deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

6   "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

7   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Bray

8   v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v.

9   Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "The ALJ is responsible for determining

10  credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews,

11  53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he

12  ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  Findings

13  of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also

14  McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can

15  support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."

16  Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also

17  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is

18  susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

19  (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must

20  consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

21  of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466

22  F.3d 880, 882 (9th Cir. 2006)).

23  III.    ANALYSIS

24          A.     Whether the ALJ Impermissibly Failed To Characterize Evidence in the Record

25                 Plaintiff claims that the ALJ erred by omitting from his "summary of the medical

26  evidence" several pieces of evidence and/or functional limitations assessed by plaintiff's treating,

7

1  examining, or non-examining physicians.  (See Pl.'s Mot. for Summ. J. at 21-25.)  Each piece of
2  evidence and opinion will be addressed in turn below.

3          1.      The 2004 Report and 2006 Letter from United Cerebral Palsy

4          Plaintiff contends that the ALJ erred by omitting certain materials from United
5  Cerebral Palsy ("UCP") in his summary of medical evidence.  UCP had performed a nine-day
6  assessment of plaintiff's work abilities in July 2004, and plaintiff later attempted to find suitable
7  work through UCP.  Specifically, plaintiff argues that the ALJ failed to discuss: (1) portions of a
8  "Performance and Observations" report completed by a job coach with UCP in 2004; and (2) a
9  letter from UCP, dated January 10, 2006.  (Pl.'s Mot. for Summ. J. at 21-22; AT 284-85, 293.)

10         Although an ALJ is required to develop the record and interpret medical evidence,
11 and cannot selectively analyze the evidence, he or she "does not need to discuss every piece of
12 evidence" in order to demonstrate that such evidence was considered and credited.  See Howard
13 ex. rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  "However, if the ALJ rejects
14 significant probative evidence, he [or she] must explain why."  Lusardi v. Astrue, 350 Fed.
15 App'x 169, 173 (9th Cir. 2009) (citing Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)).

16         The ALJ discussed portions of the 2004 report from UCP in his decision.  (AT
17 18.)  The ALJ stated:

18             A performance and observation report from United Cerebral Palsy, where
               the claimant was sent to work, stated that he had the ability to learn.  The
19             evaluator saw no reason why the claimant could not work without the
               proper training and coaching although he may need some accommodation,
20             particularly for his bad feet.  The claimant was disciplined enough to get to
               work on time and perform his assigned tasks.
21

22 (AT 18.)

23         Plaintiff contends, however, that the ALJ provided an incomplete summary of
24 UCP's report and, essentially, that the ALJ painted a selective, rosy picture of the report.  He
25 alleges that the ALJ erred by not addressing the following portion of the report:

26             [Jonathan] had a great deal of trouble with his feet.  It was very difficult

                                         8

for him to stand or move around a lot.  Although, he did perform the tasks assigned to him; it was difficult for him.  **Stamina:**  His stamina was affected because of, 1, his bad feet and 2, his total lack of any work experience.  He tired easily; and after four (4) hours he seemed to be extremely tired.  After five (5) hours, he was even more tiered [*sic*]; by his own admission, at the end of the assessment he was exhausted.

(AT 284 (emphasis in original).)  Plaintiff also notes the evaluator's assessment that plaintiff "performed most of these tasks [*sic*] some show of skill; however, he did need a great deal of instruction and coaching."  (AT 284.)

Curiously, the Commissioner cursorily opposes plaintiff's argument only on the grounds that the positive portions of the 2004 report cited by the ALJ, and quoted above, are consistent with the opinions of the following mental health providers: (1) Dr. Von Bolschwing, an examining psychologist who evaluated plaintiff (AT 314-18); Philip M. Cushman, Ph. D., who performed psychological testing on plaintiff (AT 286-92); and Daniel Bruce, L.C.S.W., a licensed social worker whose work Dr. Cushman reviewed.  (Def.'s Opp'n at 3-4.)  The Commissioner does not address the portion of the UCP report cited by plaintiff and does not argue that the ALJ was not required to address this portion of the report because it was not significant or probative.  The Commissioner appears to have ignored plaintiff's argument.

The undersigned concludes that the evidence cited by plaintiff is significant and appears to be probative of plaintiff's physical abilities and ability to perform in a work setting. At a minimum, it offers information regarding plaintiff's stamina over the course of a workday. However, the ALJ did not address these portions of the report and implicitly rejected the limitations stated therein but without any explanation.  Accordingly, the ALJ erred, and the undersigned will remand this matter for further proceedings including re-consideration of the 2004 UCP report.

Plaintiff also claims that the ALJ erred by not referencing or discussing a letter from UCP, dated January 10, 2006, which concluded that despite plaintiff's attempts to find work through UCP's Employment Preparation Program, he "was unable to obtain suitable

1    employment that would accommodate his limitations."[8]  (AT 293.)  The Commissioner does not

2    address this argument in his opposition.  Nevertheless, the undersigned concludes that the ALJ

3    did not err by omitting any reference to this 2006 letter.  This conclusory letter is not probative of

4    plaintiff's functional limitations or ability to do work.  It states that plaintiff was unable to *find*

5    suitable work, but does not explain the possible reasons for this inability, or which limitations

6    were the likely cause.  Accordingly, the ALJ did not err in omitting the 2006 letter from his

7    summary of evidence.

8                      2.      The Opinions of Drs. Von Bolschwing, Aquino, and Morgan

9                      Plaintiff further contends that the ALJ erroneously disregarded without

10    explanation certain functional limitations found by: Dr. Von Bolschwing, an examining

11    psychologist (AT 314-21); Dr. Aquino, an examining physician (AT 322-37); and Dr. Morgan,

12    an examining psychologist (AT 301-12).  The ALJ summarized, at least in part, all of these

13    examining providers' assessments (see AT 18-19), and relied on the opinions of Drs. Von

14    Bolschwing and Aquino in assessing plaintiff's RFC, stating:

15                      I give substantial weight to the assessments of the State Agency medical
                       consultants to the effect that plaintiff can perform simple, repetitive tasks
16                     at the sedentary exertional level (16F, 17F, 18F).  These assessments are
                       wholly consistent with the weight of the evidence of record and rendered
17                     by physicians, who are experts in the evaluation of the medical issues in
                       disability claims under the Social Security Act.
18

19    (AT 22.)

20                      Plaintiff contends, however, that the ALJ selectively ignored limitations found by

21    Drs. Von Bolschwing, Aquino, and Morgan without providing reasons for rejecting those

22    limitations.  He argues, in essence, that as a result of the omissions of these limitations, the ALJ's

23    RFC was incomplete and the ALJ's determination that plaintiff did not meet or equal Listing

24    12.10 was erroneous.  Specifically, plaintiff contends that the ALJ rejected a portion of Dr. Von

25    _____

26             [8] This letter notes that plaintiff left the program in May 2005.

                                                    10

1    Bolschwing's opinion that plaintiff had "marked" restrictions with respect to his ability to

2    "[r]espond appropriately to usual work situations and to changes in a routine work setting."  (AT

3    320.)  Plaintiff further claims that the ALJ rejected portions of Dr. Aquino's medical opinion,

4    which opined that as a result of his ankle impairment, plaintiff: (1) was limited in his ability to

5    stand/walk for 15 minutes at a time for a total of less than two hours during an eight-hour

6    workday, and (2) would need to elevate his leg periodically.  (AT 325, 327.)  Plaintiff also argues

7    that the ALJ "completely disregarded" Dr. Morgan's opinion that plaintiff had a "marked"

8    impairment insofar as his ability to maintain social functioning was concerned, and the Global

9    Assessment of Functioning ("GAF") score of 50 assigned by Dr. Morgan.[9]  (AT 311, 312.)

10            The medical opinions of three types of medical sources are recognized in social

11   security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

12   do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

13   claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's

14   opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

15   and an examining physician's opinion is entitled to greater weight than a non-examining

16   physician's opinion.  Id.  Where a treating or examining physician's opinion is uncontradicted by

17   another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

18   treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical

19

20        [9]  At the outset, the undersigned concludes that the ALJ did not err by omitting reference to
     the GAF score assigned by Dr. Morgan.  Plaintiff's argument is unpersuasive because "[a]n ALJ
21   does not commit legal error by failing to incorporate a GAF score into his disability assessment."
     Speelman v. Astrue, No. EDCV 09-1222 CW, 2010 WL 3001664, at *4 (C.D. Cal. July 29, 2010)
22   (unpublished) (concluding that ALJ's failure to discuss a GAF score assigned by a treating physician
     was not legal error); see also McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (holding
23   that the "ALJ's failure to address the three GAF scores specifically does not constitute legal error"
     where the RFC assessment took into account the claimant's mental impairments, was not
24   inconsistent with the claimant's three limited duration GAF scores, and was supported by substantial
     evidence in the record); Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While
25   a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to
     the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone,
26   does not make the RFC inaccurate.")

1   opinion is contradicted by another doctor, the Commissioner must provide "specific and

2   legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

3   substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ

4   can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

5   clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533

6   F.3d at 1041 (modification in original, citation and quotation marks omitted).

7           Here, the ALJ adopted portions of Dr. Von Bolschwing's and Dr. Aquino's

8   opinions, but tacitly rejected the portions cited by plaintiff without explanation.  The assigned

9   RFC did not incorporate Dr. Aquino's assessed limitations related to plaintiff's ability to

10  stand/walk and his need to elevate his leg.  Additionally, the RFC does not incorporate Dr. Von

11  Bolschwing's observation of plaintiff's marked difficulty with responding appropriately to usual

12  work situations and to changes in a routine work setting.  The ALJ did not otherwise address the

13  implicit rejection of these limitations in his decision.  Although an ALJ need not adopt or discuss

14  every portion of a doctor's opinion, the undersigned cannot deduce what treatment the ALJ gave

15  to these limitations.  On the particular facts of this case, the undersigned is left with the feeling

16  that the ALJ selectively adopted portions of the opinions that would favor a finding of "not

17  disabled," while selectively ignoring portions that might favor plaintiff.  This may well not be the

18  case, but the undersigned cannot so conclude on this record.  Accordingly, the undersigned will

19  remand this matter for further evaluation and discussion of the limitations raised by plaintiff.

20          Conversely, the ALJ did not err with respect to consideration of Dr. Morgan's

21  opinion.  Dr. Morgan had concluded that plaintiff met the criteria in Listing 12.10, which would

22  render plaintiff presumptively disabled.  (AT 311.)  The ALJ rejected Dr. Morgan's conclusion in

23  this regard, stating: "I give little weight to the assessment of Robert L. Morgan, Ph.D., to the

24  effect that the claimant meets the criteria of listing 12.10. . . .  Dr. Morgan's own evaluation of

25  the severity of the claimant's limitations does not support that finding as the claimant is found

26  with only one marked area of impairment."  (AT 22.)  This statement indicates that the ALJ

1  considered and did not reject Dr. Morgan's assessment that plaintiff had marked difficulty with

2  respect to his ability maintain social functioning.  The ALJ noted "one marked area of

3  impairment."  Thus, the ALJ did not ignore or reject Dr. Morgan's assessment as alleged by

4  plaintiff and, as a result, did not err.

5                          3.      Dr. Egelston's Opinion

6          Plaintiff also alleges that the ALJ erred by rejecting the opinion of an orthopedic

7  surgeon, William Egelston, M.D., without addressing or expressly rejecting that opinion in his

8  decision.  (Pl. Mot. for Summ. J. at 24.)  Dr. Egelston completed a "Functional Capacities

9  Evaluation" form, dated December 19, 2006, based on an examination of plaintiff.  (AT 313.)

10  He noted that plaintiff had left foot congenital coalition of the subtalar joint and that although

11  plaintiff had undergone surgery for that condition, some bone spurs remained at the site that

12  possibly continued to cause symptoms at the site.  He opined that plaintiff could work only four

13  hours in an eight-hour workday and could stand or walk for only five to ten minutes at a time

14  during the workday.  He also concluded that plaintiff could not use his left foot for "repeated

15  movements."  The ALJ did not address Dr. Egelston's opinion and, thus, offered no specific and

16  legitimate reasons for rejecting it.  This was error.

17          The Commissioner concedes that the ALJ "did not address" Dr. Egelston's

18  opinion.  (Def.'s Opp'n at 6.)  Nevertheless, he attempts to save the ALJ's decision in two ways.

19  First, the Commissioner offers several post-hoc justifications in support of the rejection of Dr.

20  Egelston's opinion.  (See id.)  However, this court declines the invitation to review the

21  Commissioner's after-the-fact reasons for rejecting Dr. Egelston's opinion because the court is

22  constrained to review the reasons relied on by the ALJ.  See Tommasetti, 533 F.3d at 1039 n.2

23  (refusing to consider a reason for discounting the plaintiff's credibility that was offered by the

24  district court, but was not relied on by the ALJ); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)

25  (stating that a reviewing court may only review the reasons provided by the ALJ in the disability

26  determination and "may not affirm the ALJ on a ground upon which he did not rely"); Stout v.

                                                13

1   Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) ("[W]e cannot affirm the decision of an agency on

2   a ground that the agency did not invoke in making its decision" (citation and quotation marks

3   omitted).); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (stating that the Court of

4   Appeals could not rely on the independent findings of the district court, and stating that "[w]e are

5   constrained to review the reasons the ALJ asserts"); Barbato v. Comm'r of Soc. Sec. Admin.,

6   923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (refusing to consider reasons for rejecting a

7   medical opinion offered by the Commissioner in his motion for summary judgment that were not

8   relied on by the ALJ); see also Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738

9   (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds

10  articulated by the agency."); Vista Hill Found., Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985)

11  (stating that "an agency's decision can be upheld only on a ground upon which it relied in

12  reaching that decision").

13          Second, the Commissioner contends that any error resulting from the ALJ's silent

14  rejection of Dr. Egelston's opinion was harmless "because it consisted of checked boxes on a

15  form, did not involve detailed analysis, and was and [sic] inconsistent with the record as a whole,

16  and, moreover, the ALJ and Dr. Aquino took into account Plaintiff's surgeries and limitations."

17  (Def.'s Opp'n at 6-7.)   The undersigned disagrees.   Harmless error exists where it is "clear from

18  the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"

19  Robbins, 466 F.3d at 885 (citing Stout, 454 F.3d at 1055-56).   The undersigned cannot conclude

20  from the ALJ's decision and the remaining record that the ALJ's error was harmless.   As an

21  initial matter, case law in this Circuit supports the proposition that the silent rejection of a

22  doctor's opinion is not harmless error.   See Pham v. Astrue, 695 F. Supp. 2d 1027, 1031-32

23  (C.D. Cal. 2010) (concluding that the ALJ's failure to address medical opinions was legal error

24  that was not harmless); cf. Stout, 454 F.3d at 1053 (holding that the ALJ's silent rejection of

25  competent lay witness testimony was not harmless error).   In any event, the undersigned cannot

26  conclude that the ALJ's silent rejection of Dr. Egelston's opinion was inconsequential to the

1  ultimate disability determination because Dr. Egelston clearly assessed limitations that would

2  potentially alter the ALJ's RFC.  Moreover, the Commissioner's harmless error argument

3  requires that the court consider the Commissioner's post-hoc reasons for discounting Dr.

4  Egelston's opinion, which the court declines to do.

5       B.   Whether the Appeals Council Erred In Rejecting Dr. Davis's Opinion

6            Plaintiff further contends that the Appeals Council erred by not providing specific

7  and legitimate reasons for rejecting the opinion of Dr. Davis (AT 348-51), which plaintiff

8  submitted after the ALJ issued his second decision finding that plaintiff was not disabled.  Dr.

9  Davis is a licensed clinical psychologist specializing in disability assessments, anxiety disorders,

10  and depressive conditions.  (AT 346.)  In summarizing his examination results, Dr. Davis opined:

11       Mr. John Luckett (with information corroborated by Kathleen Luckett), a
         clinical interview, a Mental Status Examination, Behavioral Observations
12       and the Asperger's Check-off Symptom list all converged upon the
         diagnosis of Asperger's Syndrome.  This is a subtle yet severely
13       incapacitating condition which renders Mr. Luckett incapable of gainful
         employment in my professional opinion as a Clinical Psychologist with
14       over 4 years in the field of Developmental Disabilities and a total of 20
         years in Clinical Practice.

15

16  (AT 347.)

17            The Appeals Council indicated in its "Notice of Appeals Council Action" that it

18  had considered plaintiff's claims of error and Dr. Davis's newly offered opinion, but concluded

19  that "this information does not provide a basis for changing the Administrative Law Judge's

20  decision."  (AT 7-8.)  Thus, the Appeals Council denied plaintiff's request for review.[10]

21  _____

22       [10]  With respect to the Appeals Council's review of a case, the Commissioner's regulations
         state:

23
         (a) The Appeals Council will review a case if--
24
              (1) There appears to be an abuse of discretion by the administrative
25            law judge;

26              (2) There is an error of law;

15

1    Decisions in this Circuit support the proposition that where the Appeals Council

2  considers a treating doctor's opinion submitted after issuance of the ALJ's decision and rejects

3  that opinion or denies review after consideration of that opinion, it must provide reasons for

4  doing so consistent with the standards applicable to the rejection of medical opinions generally.

5  See Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993) (holding that the ALJ and Appeals

6  Council erred by failing to provide any reasons, let alone specific and legitimate reasons, for

7  rejecting a treating physician's opinion); Brent v. Astrue, No. EDCV 09-519-MAN, 2010 WL

8  3521788, at *5-6 (C.D. Cal. Sept. 7, 2010) (unpublished) (concluding that the Appeals Council

9  erred by summarily rejecting the later-submitted opinion of an examining physician without

10  providing specific reasons supporting such rejection); Jenkins v. Astrue, No. EDCV

11  09-0158-JEM, 2010 WL 368877, at *4 (C.D. Cal. Jan. 27, 2010) (unpublished) ("The bald

12  conclusion that Dr. Peterson's statement did not provide a basis for changing the ALJ's decision

13  is legally insufficient.  The Appeals Council should have set forth specific and legitimate reasons

14  supported by substantial evidence for rejecting Dr. Peterson's statement or remanded the case

15

16    (3) The action, findings or conclusions of the administrative law judge
   are not supported by substantial evidence; or

17    (4) There is a broad policy or procedural issue that may affect the
   general public interest.

18

19  (b) If new and material evidence is submitted, the Appeals Council shall
   consider the additional evidence only where it relates to the period on or
20  before the date of the administrative law judge hearing decision.  The
   Appeals Council shall evaluate the entire record including the new and
21  material evidence submitted if it relates to the period on or before the date of
   the administrative law judge hearing decision.  It will then review the case if
22  it finds that the administrative law judge's action, findings, or conclusion is
   contrary to the weight of the evidence currently of record.

23  20 C.F.R. § 404.970.

24    In its opposition, the Commissioner suggests that the Appeals Council expressly found that
   Dr. Davis's opinion "was not contrary to the weight of all the evidence, and the new evidence was
25  not  material and did not relate to the period on or before the date of that decision." (Def.'s Opp'n
   at 5.)  Although such a finding may be implied from the result of the Appeals Council's work, it
26  made no such express findings.

16

1  back to the ALJ to consider it."); Castillo v. Astrue, No. CV 07-4744-RC, 2008 WL 4330253, at

2  *4 (C.D. Cal. Sept. 18, 2008) (unpublished) (same); Siska v. Barnhart, No. C 00-4788 MMC,

3  2002 WL 31750220, at *5 (N.D. Cal. Dec. 4, 2002) (unpublished) ("[T]he Appeals Council

4  considered the opinions of Dr. Chua and Cook, but found those opinions did not provide a basis

5  for changing the ALJ's decision. . . .  In so ruling, the Appeals Council did not provide any

6  specific and legitimate reasons for its conclusion, and thus erred."); compare Jesus v. Astrue, No.

7  EDCV 07-1247-MAN, 2009 WL 2900290, at *5-6 (C.D. Cal. Sept. 3, 2009) (unpublished)

8  (concluding that the Appeals Council properly rejected a medical opinion submitted after entry of

9  the ALJ's decision by offering specific and legitimate reasons for doing so).

10         Here, the Appeals Council provided a non-specific reason for disregarding Dr.

11  Davis's opinion, which plaintiff reasonably characterizes as "boilerplate."  The Appeals Council

12  did not state, even in cursory terms, a specific reason for rejecting Dr. Davis's opinion.

13  Accordingly, the Appeals Council erred and this matter will be remanded for further

14  consideration of Dr. Davis's opinion.[11]

15         C.     Whether the ALJ Improperly Discounted Plaintiff's Testimony

16         Plaintiff also claims that the ALJ improperly found plaintiff to be less than

17  entirely credible.  In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the

18  ALJ's task with respect to assessing a claimant's credibility:

19              To determine whether a claimant's testimony regarding subjective
              pain or symptoms is credible, an ALJ must engage in a two-step analysis.
20            First, the ALJ must determine whether the claimant has presented
              objective medical evidence of an underlying impairment which could
21            reasonably be expected to produce the pain or other symptoms alleged.
              The claimant, however, need not show that her impairment could
22            reasonably be expected to cause the severity of the symptom she has
              alleged; she need only show that it could reasonably have caused some

23

24         [11]  In response to plaintiff's argument, the Commissioner offers several reasons that would
    purportedly support the rejection of Dr. Davis's opinion.  (Def.'s Opp'n at 5.)  However, the
25  undersigned has not considered these newly proffered reasons because, as stated above, "an agency's
    decision can be upheld only on a ground upon which it relied in reaching that decision."  Vista Hill
26  Found., Inc., 767 F.2d at 559; see also Orn, 495 F.3d at 630.

degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

504 F.3d at 1035-36 (citations and quotation marks omitted).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id. at 959.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms alleged by plaintiff, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  (AT 21.)  Given the absence of evidence of malingering, the ALJ was required to provide clear and convincing reasons in support of his adverse credibility finding.  He offered several reasons in this regard.

For example, the ALJ relied on the fact that the "record reflects no actual treatment for the claimant's alleged mental impairments."  (AT 21.)  Relatedly, the ALJ stated that "there are no treatment records whatsoever prior to October 3, 2003, shortly before this application was filed."  (AT 21.)  The ALJ's statement appears to be technically true insofar as mental health records are concerned, but it does not paint a complete picture.  Plaintiff's mother testified that plaintiff had been prescribed a medication for a social phobia in the third grade.

1   (AT 54.)  Additionally, plaintiff's parents attempted to accommodate his mental impairments by

2   placing him in special education classes and controlled classroom environments.  (AT 54.)

3   These actions appear to be consistent with behavioral treatments for autism spectrum disorders.[12]

4           The ALJ also reasoned that "[n]o initial allegation was made regarding his

5   allegedly disabling foot impairment."  (AT 21.)  It appears, based on this statement, that the ALJ

6   did not believe that plaintiff had a foot impairment.  However, the record supports that plaintiff

7   had three surgeries to repair bones in his left foot.  Moreover, Dr. Aquino, whose opinion the

8   ALJ relied on to some extent, found that plaintiff had "significant findings of the left ankle

9   corresponding to his complaints."  (AT 325.)  Dr. Aquino also assessed a standing/walking

10   limitation of 15 minutes at one time, which was related to plaintiff's ankle problems.  These facts

11   would at least appear to substantiate that plaintiff had some ankle impairment that caused

12   symptoms.  The ALJ did not explain why the absence of an "initial" allegation of a disabling foot

13   impairment was not overcome by the medical records.

14           Furthermore, the ALJ stated: "The claimant has never worked, which raises some

15   questions as to whether the current unemployment is truly the result of medical problems."  (AT

16   21.)  It is unclear why plaintiff's unemployment suggests that he is not credible.  The record

17   supports that plaintiff had attempted to find suitable employment, but had failed, at least in part,

18   because of his potentially disabling impairment.  The ALJ's attempt to discount plaintiff's

19   credibility on this basis is neither clear nor convincing based as set forth in the ALJ's present

20   decision.

21           The ALJ also reasoned that plaintiff's completion of high school and community

22   college classes, and his ability to drive and supervise a younger cousin undermined his

23

24       [12]  See Merck Manual 2487 (discussing treatment for autism spectrum disorders and stating, in part: "Treatment is usually multidisciplinary, and recent studies show measurable benefits from

25   intensive, behaviorally based approaches that encourage interaction and meaningful communication. Psychologists and educators typically focus on behavioral analysis and then match behavioral

26   management strategies to the person's specific behavioral problems at home and at school.").

1    credibility.  These reasons, especially plaintiff's ability to supervise a younger child, support the

2    ALJ's credibility finding.  However, on the whole, the undersigned cannot conclude that the

3    reasons provided in support of the ALJ's credibility finding are "clear and convincing."

4    Accordingly, the ALJ should reassess the credibility finding on remand.

5           D.      Whether the ALJ Improperly Rejected Third Party Lay Witness Testimony

6                   Plaintiff also claims that the ALJ improperly rejected the lay witness testimony

7    and/or statements of Kathleen A. Luckett, plaintiff's mother.  (Pl.'s Mot. for Summ. J. at 31-34.)

8    Ms. Luckett testified regarding plaintiff's functional limitations, including, among other things,

9    plaintiff's ability to complete tasks without supervision or instruction and the impact of his

10   congenital bone defect; she also provided written reports regarding plaintiff's limitations.  (See

11   AT 49-57, 155-63, 198-206.)

12                  The Ninth Circuit Court of Appeals has long-held that "'[i]n determining whether

13   a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's

14   ability to work.'"  Bruce, 557 F.3d at 1115 (quoting Stout, 454 F.3d at 1053); see also 20 C.F.R.

15   §§ 404.1513(d), 416.913(d).  Such testimony "*cannot* be disregarded without comment."  Id.

16   (citation omitted).  "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must

17   give reasons that are germane to each witness.'"  Valentine, 574 F.3d at 694 (modification in

18   original) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).  "[T]he reasons 'germane

19   to each witness' must be specific."  Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054).

20                  Here, the ALJ considered Ms. Luckett's testimony and written submission.  (See

21   AT 21, 22.)  However, he assigned "little weight" to Ms. Luckett's statements because she "has a

22   vested interest in the outcome of this matter."  (AT 22.)

23                  In defending the ALJ, the Commissioner correctly notes that in Greger v.

24   Barnhart, the Ninth Circuit Court of Appeals affirmed an ALJ's rejection of a lay witness's

25   affidavit attesting to the plaintiff's limitations "in part" on the grounds that the lay witness had a

26   "close relationship" with the plaintiff and was possibly influenced by a desire to help the

1   plaintiff.  464 F.3d 968, 972 (9th Cir. 2006); see Def.'s Opp'n at 8.  However, the Court of

2   Appeals also affirmed on the basis of the additional reasons provided by the ALJ; namely, that

3   the lay witness's affidavit was inconsistent with the plaintiff's treatment records during the

4   period at issue and inconsistent with the plaintiff's failure to participate in cardiac rehabilitation.

5   Greger, 464 F.3d at 972.  Thus, Greger does not stand for the proposition that an ALJ may reject

6   lay witness testimony or statements solely on the ground that the witness has a close relationship

7   with the plaintiff or a vested interest in assisting the plaintiff.  The Court of Appeals did not say

8   as much, and it is unclear what weight it gave to the close relationship between the plaintiff and

9   the lay witness.

10          The rule proposed by the Commissioner would effectively nullify the

11  Commissioner's own regulations, which provide that the agency may consider "other non-

12  medical sources" of information in assessing the severity of a claimant's impairments and

13  resulting impacts on a claimant's ability to work, and that such other sources may be "spouses,

14  parents or caregivers, siblings, other relatives, friends, neighbors, and clergy."  20 C.F.R.

15  § 404.1513(d); accord 20 C.F.R. § 416.913(d).  If a close relationship between the lay witness

16  and the claimant could alone justify the rejection of that witness's testimony, an ALJ would

17  never be required to consider lay witness testimony offered by a family member.  Circuit law

18  does not support such the Commissioner's proposed rule.  See Smolen v. Chater, 80 F.3d 1273,

19  1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for

20  rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the

21  claimant every day is of particular value . . . ."); accord Regennitter v. Comm'r of Soc. Sec.

22  Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

23          The ALJ's reason for rejecting Ms. Luckett's testimony is not sufficient, by itself,

24  to support that rejection.  Accordingly, the undersigned will remand this matter for the additional

25  reason that the ALJ did not adequately support rejection of Ms. Luckett's testimony and

26  statements.

1          E.      Whether the ALJ Erred By Not Evaluating the Impact of Plaintiff's Obesity

2                  Plaintiff also argues that the ALJ ignored the Commissioner's policy statements

3    and the Appeals Council's remand order by not evaluating the impact of plaintiff's obesity on his

4    functional abilities, consistent with obligations to do so imposed by SSR 02-1p.  (Pl.'s Mot. for

5    Summ. J. at 37-38.)  SSR 02-1p states that "[o]besity is a complex, chronic disease characterized

6    by excessive accumulation of body fat."  It further states that obesity "commonly leads to, and

7    often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body

8    systems," and "may also cause or contribute to mental impairments such as depression."  SSR

9    02-1p also requires an ALJ to consider an individual's obesity at steps two through five of the

10   sequential evaluation, and requires that obesity be considered in combination with the

11   individual's other impairments.[13]  It also states that "[an adjudicator] will not make assumptions

12   about the severity or functional effects of obesity combined with other impairments.  Obesity in

13   combination with another impairment may or may not increase the severity or functional

14   limitations of the other impairment.  [The adjudicator] will evaluate each case based on the

15   information in the case record."  Ninth Circuit case law also requires an ALJ to determine the

16   effect of a claimant's obesity on his or her other impairments.  See Celaya v. Halter, 332 F.3d

17   1177 (9th Cir. 2003).

18                 Consistent with SSR 02-1p, the Appeals Council's order remanding the ALJ's

19   initial decision in this case specifically noted the following:

20                  Evidence of record also shows that the claimant is obese with a weight
                    between 270 and 300 pounds (Exhibit 8F).  This was confirmed by the
21                  psychologist's report of June 21, 2006.  However, the hearing decision
                    contains no evaluation of obesity consistent with SSR 02-1p.
22

23   (AT 125.)  Although this remand order did not specifically order the ALJ to address SSR 02-1p

24   _____

25       [13]  "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and
     policy."  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not carry
26   the 'force of law,' . . . they are binding on ALJs nonetheless.  Bray, 554 F.3d  at 1224 (citation
     omitted).

                                                      22

1   on remand, the clear implication from that order is that the ALJ had erred in his initial decision

2   by not evaluating plaintiff's obesity consistent with SSR 02-1p.

3           In his second hearing decision, the ALJ found that plaintiff's obesity was a severe

4   impairment at step two of the sequential analysis.  (AT 17.)  Thus, the ALJ must have believed

5   that plaintiff's obesity had some material impact on plaintiff's ability to do basic work activities.

6   See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) ("An impairment or combination of

7   impairments may be found not severe *only* if the evidence establishes a slight abnormality that

8   has no more than a minimal effect on an individual's ability to work" (citations and quotation

9   marks omitted).).  However, the ALJ did not indicate in his decision whether he considered SSR

10  02-1p at all and, more importantly, did not assess the impact that obesity had on plaintiff's

11  functional abilities or his other impairments.  For example, the ALJ did not discuss whether or to

12  what extent plaintiff's obesity exacerbated his foot/ankle problem.  In short, it is unclear from the

13  ALJ's decision whether he disregarded the Appeals Council's remand order and SSR 02-1p, or

14  whether he considered, but failed to expressly address, obesity in assessing plaintiff's disability

15  claim at steps three through five of the sequential analysis.  In either case, remand is warranted so

16  that a complete analysis of plaintiff's obesity can be properly factored into all steps of the

17  sequential analysis in accordance with SSR 02-1p.

18                                        * * *

19          Because the undersigned will remand this matter to the agency for further

20  proceedings on several issues, the court will not specifically address plaintiff's arguments that the

21  ALJ: (1) erred by finding that he did not meet or equal Listing 12.10, and (2) assessed an

22  inaccurate RFC and thus posed legally inadequate hypothetical questions to the VE.  The

23  undersigned need not address those remaining claims of error because they derive, at least in part,

24  from the errors addressed above.

25  ////

26  ////

IV.     <u>CONCLUSION</u>

        For the reasons stated above, IT IS HEREBY ORDERED that:

        1.      Plaintiff's motion for summary judgment is granted in part.

        2.      This matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

        3.      The Clerk of Court enter judgment in favor of plaintiff.

        IT IS SO ORDERED.

DATED:  September 27, 2010

<br>

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

24